No. 30,344.

THE LA HARPE FARMERS UNION, etc., *Appellant*, v. THE UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellee*.

(8 P. 2d 354.)

Opinion filed March 5, 1932.

F. G. Apt, A. R. Enfield, F. J. Oyler and G. R. Gard, all of Iola, for the appellant.

J. C. Edwards, of Iola, W. L. Wood and T. F. Railsback, both of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The La Harpe Farmers Union brought this action against the United States Fidelity and Guaranty Company to recover on a fidelity bond issued by it on May 9, 1927, which was in the sum of $2,000. A rider was attached on June 17, 1927, by which the policy was increased to $5,000. A motion to make the petition of plaintiff more definite and certain was filed and partially argued when the court in the progress of the argument suggested the filing of a demurrer, as a decision of the motion would be futile unless the petition stated a cause of action. The suggested demurrer was filed by the defendant and the court then decided that before there could be a recovery upon the bond there should be a determination of the liability of the principal, the employee. It appears that Roberts had not signed the bond and was not made a party to the action, and that his liability had not been determined. The court then sustained the demurrer and rendered judgment against the plaintiff for costs on the grounds stated. Plaintiff appeals.

It is the theory of the plaintiff that an action may be maintained on the bond, if there be a liability against the surety alone, and that there was error in the ruling of the court in sustaining the demurrer upon the ground mentioned. The defendant does not claim that the ground assigned by the court was sufficient to sustain the demurrer, but insists that if the demurrer was good on any ground, it should be sustained, and that the reason given by the court for its ruling was unimportant. It is argued that where the judgment rendered by the court is based on erroneous theory, and there are other grounds by which a like judgment might have been rendered, the judgment

cannot be reversed merely because a wrong theory of the law was adopted by the court or because the reason assigned for it may be incorrect if other sufficient reasons do exist.

It is true, as defendant contends, that the general demurrer challenged the sufficiency of the allegations made in the petition and if the petition did not state a cause of action, the ground given for sustaining the demurrer is unimportant and does not constitute a ground of reversal. It has been decided that a correct decision for which a wrong reason is given is not material error, and the same is true where a court renders a correct judgment upon a wrong theory of the law. (*Scattergood v. Martin,* 57 Kan. 450, 46 Pac. 935; *Saylor v. Crooker,* 97 Kan. 624, 156 Pac. 737; *Hess v. Hess,* 104 Kan. 207, 178 Pac. 750; *Chaput v. Demars,* 120 Kan. 273, 243 Pac. 311.) The rule was stated and the decision supporting it cited in Dassler's Code Annotated, 2d ed. 1644. There it was said:

"Where the judgment rendered by the trial court is supported by the undisputed evidence in the case, and must necessarily have been rendered under the law, on the facts presented, it will not be reversed because the trial court adopted a wrong theory of the law, and based its judgment on such erroneous theory, or gives an insufficient or incorrect reason for its rulings. And where all the members of the supreme court are of the opinion that the judgment of the court below should be affirmed, it must be affirmed, although the judges may differ as to the reasons therefor," etc.

The defendant does not attempt to defend the theory of the trial court that an action cannot be maintained against the surety alone unless such a condition is prescribed in the bond, but ignoring the question defendant insists that the petition absolutely failed to state a cause of action, that the demurrer to the pleading must be sustained and is the correct and only valid decision the court could have rendered.

Assuming, as defendant has done, that the ruling is erroneous for the reason assigned, we are remitted to the question, Do the allegations of the petition state a cause of action against the defendant? and if for any good reason they do not the ruling must be sustained. The first count alleges, in substance, that the plaintiff was in the mercantile business, that W. C. Roberts was an employee of the plaintiff in charge of its business limited to such necessary acts and duties as were delegated to him by the directors of plaintiff, and was subject to their orders and supervision. It is alleged that the surety bond was executed by the defendant, binding itself in the specified

sum to pay plaintiff for any loss "the employer shall have sustained by an act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication, committed after the date hereof by W. C. Roberts," etc. The bond was executed on May 9, 1927. It is alleged that during the year, that is, from the first of March, 1929, up to April 30, 1930, Roberts was in charge of the mercantile business for plaintiff. Among other regulations regarding the duties of Roberts, he was required to render monthly reports of the affairs of the company, and that in compliance with this rule Roberts at each and every monthly meeting of the board made his report. That the reports made, with the exception of the month of January, 1930, showed that the business of the company was profitable at least sufficient to provide funds for the maintenance of the business. It is then alleged that the reports made by Roberts were untrue, incorrect and were made by him for the purpose of fraudulently concealing the true condition of the association and misleading the board of directors and thus secure the continuation of the association and of his employment. Plaintiff then alleges that on March 5 an audit of the association was made, and it was then discovered that the reports were untrue and that by reason of the reports the condition of the business was not disclosed to the directors; that the audit disclosed that while Roberts was representing to the board that the business was profitable in some manner, the same being unknown to plaintiff, there was a shortage of $1,535; that this loss would not have been incurred if true reports had been made. Then it is alleged that by reason of the action of Roberts the association suffered a pecuniary loss of $1,535. There is a statement that the plaintiff made due proof of the loss on May 24, 1930, and requested payment thereon, but the defendant refused to pay the same. A copy of the audit is attached as an exhibit. The bond provided that there should be payment of any pecuniary loss sustained by the plaintiff for the several specific acts which it will be observed constituted either crimes or acts amounting to fraud, and there was a requirement in the bond that the employer should:

"Give notice by registered letter addressed to the surety at its home office as soon as possible after becoming aware of any act committed by the employee which may be made the basis of a claim hereunder, and in all events not later than ten days thereafter, and within ninety days after the date of said notice, shall file with the surety its itemized claim hereunder, duly sworn to, and if required by the surety shall produce in support thereof, at the office of

the employer, all books, vouchers, and other evidence in the employer's possession."

The petition discloses that the required notice was not given, nor is any excuse pleaded for neglecting to give it. No waiver is pleaded, but instead of that the petition shows affirmatively that the alleged defaults of the employee were discovered when an audit was made on March 5, 1930. Then it is admitted plaintiff became aware of the employee's wrongful acts and under the terms of the bond should have given notice to the surety at least within ten days thereafter. There is an averment in the petition that proof of loss was made to the surety on May 24, 1930, but this was not a compliance with the terms clearly expressed in the bond. This was not a notice, nor if it could be so regarded was it a compliance with the express terms of the bond to give a notice at least ten days after becoming aware of the act of the employee. The purpose of the notice was to enable the surety company to make investigations and to take the necessary steps to indemnify or protect itself, and it was a plain provision which expressed the agreement of the parties with such clearness as can leave no controversy as to its meaning. It has been held that the failure of the insured to comply with such a requirement will defeat a recovery. (*Gamble-Robinson Co. v. Mass Bonding & Ins. Co.*, 113 Minn. 38, 25 C. J. 1100.)

Aside from the defect as to notice there is a manifest lack of particulars in the petition of facts which would constitute a sufficient charge of fraud and dishonesty. The defendant only bound itself to pay plaintiff for losses sustained by acts of fraud, dishonesty, theft, forgery, embezzlement, wrongful abstraction or willful misapplication committed by the employee. The charge made against Roberts in the petition is that he made untrue reports of the business done and is only the equivalent of a charge that plaintiff had been defrauded by fraudulent representations. Wherein the reports were fraudulent so as to cause plaintiff to suffer a pecuniary loss is not stated. Did he make false entries in the books as to goods purchased or as to goods sold, or did he wrongfully make false entries of expenses incurred or fail to enter all the expenses in the books that were incurred and payable? This question is not answered by the reports or the allegations in the petition. It is not enough to employ epithets or general averments of fraud, but the particular facts constituting the fraud must be set out to make a good pleading. In *State, ex rel., v. Williams*, 39 Kan. 517, 18 Pac. 727, it was said:

"Where fraud and illegality are charged as grounds for the cancellation of a contract, the specific facts constituting the fraud and illegality must be set forth. A mere general averment of fraud and illegality, without stating the facts on which the charge is based, presents no issue, and no proof is admissible thereunder." (Syl. ¶ 1.)

In *Ladd v. Nystol*, 63 Kan. 23, 64 Pac. 985, the same rule was announced, and in the opinion it was said:

"It will be observed that the last two of the above-quoted allegations of fraud were of the most general character. No specific facts and circumstances were stated in them, and therefore no issue was presented by such parts of the petition. The decisions are full to the effect that general averments of fraud and illegality, without stating the facts upon which the charges are based, present no issue, and evidence thereunder is not admissible."

See, also, *Houser v. Smith*, 80 Kan. 260, 101 Pac. 1001; *Dowell v. Railway Co.*, 83 Kan. 562, 568, 112 Pac. 136; *Gundelfinger v. Thiele*, 133 Kan. 31, 298 Pac. 769.

An exhibit of the reports made shows that Roberts was not an expert in bookkeeping, but there is no allegation that any entry made of the business was false or that any entry was improperly omitted or added. It may have been that mistakes were made in accounting and that he was inefficient in the business, but the bond does not insure the efficiency, skill or intelligence of Roberts. It only insures, as we have seen, against acts of fraud and dishonesty, which cause a pecuniary loss, and does not extend to loss by simple mistakes which are without fraud or dishonesty. It is stated that the reports were untrue and fraudulent, but in what particulars the plaintiff does not undertake to state, and before a pleading on such grounds can be held sufficient the specific facts and circumstances from which fraud and dishonesty may be inferred must be definitely stated. There was no error in sustaining the demurrer to the first count.

The second count states that Roberts sold live stock and received from purchasers rebates in the amount of $321.55 which should have been returned to the shippers, but that Roberts had placed the amount to the credit of the association and used it for other purposes of the association with the result that the plaintiff had been compelled to reimburse the shippers to whom the money belonged. It is not stated that the money so received was appropriated by Roberts, nor even that it had been diverted from the funds of the association. It simply alleges that money obtained in a business transaction really belonged to others and the plaintiff had been required to turn it back to them. It alleges it was required to return

the money, which it did not claim and to which it had no right. There was no loss to plaintiff pleaded and certainly no reason why the surety should pay plaintiff money that it had not lost.

The third count alleges that when the plaintiff discovered irregularities of Roberts, it orally instructed him not to pay out any of the funds of the association nor to write any checks upon its account, but that contrary to the instructions he had written checks to the amount of $1,055, which overdrew plaintiff's account in the bank, and it had to make good the amount drawn on the checks to the bank. Plaintiff does not allege that the checks so drawn were for the personal use or benefit of Roberts. It is not alleged that the association did not owe the parties to whom the checks were issued. The date of the checks was not even stated, nor were the names of the payees pleaded, and the plaintiff was careful to avoid stating that it did not owe the parties the amounts named in the checks. It did say that contrary to instructions Roberts drew checks to an amount which overdrew its account. If the payments were made for bills that were due from plaintiff and which it must have paid regardless of its oral instructions, its financial assets were not diminished—at least, it sustained no loss for which the surety is liable. In the absence of allegations which are lacking as to fraud and dishonesty, no cause of action was stated. That count, like the preceding ones, fails to state a cause of action, and hence there was no error in sustaining the demurrer to plaintiff's petition.

The judgment is affirmed.