No. 33,406

In re Estate of Sarah Josephine Dennis, Deceased. (O. A. KEACH and O. A. KEACH as Executor, etc., *Appellant*, v. ROY McDONALD, CECIL McDONALD and THE STATE OF KANSAS, *Appellees*.)

(68 P. 2d 1083)

Opinion filed June 12, 1937.

*C. L. Kagey, Hal M. Black, L. M. Kagey,* all of Wichita, and *John G. Egan,* of Topeka, for the appellant.

*A. M. Ebright, P. K. Smith, A. W. Hershberger, J. B. Patterson, E. E. Hook* and *P. J. Warnick,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This appeal presents questions of practice in an appeal from an order of the probate court removing an executor because of his failure to give an executor's bond as directed to do.

It appears that heretofore on November 28, 1935, Sarah Josephine Dennis, of Sedgwick county, died testate, leaving a considerable estate in real and personal property. She made a number of bequests to various beneficiaries, including one for $5,000 to O. A. Keach; a devise of real property in Indiana to Alta L. Handley, a sister of Keach; and bequeathed her residual estate to the last two named beneficiaries. By the will O. A. Keach was named as executor, with the request of the testatrix that he be not required to give bond.

The will was admitted to probate on December 2, 1935, and O. A. Keach was appointed executor without bond, and he qualified the same day.

Shortly thereafter certain beneficiaries made application to the probate court that the executor be required to give bond. The state of Kansas, which laid claim to the estate, on grounds of no present concern (*State v. Keach,* 145 Kan. 403, 65 P. 2d 598), also filed an application to require the executor to file a bond notwithstanding the testamentary request that he be excused from so doing.

On January 9, 1936, the probate court made an order requiring Keach, executor, "within a reasonable time" to give bond in the sum of $50,000, in which order it was also stated that the court did so "on its own motion and discretion."

The executor made no effort to comply with this order, but he did take some steps to appeal from it, the legal significance of which will be noticed as we proceed.

On May 4, 1936, certain beneficiaries of the estate filed a motion in the probate court for the removal of Keach as executor because of his failure to furnish bond as directed to do nearly four months previously. That motion was sustained and the court made an order removing him.

Within three days, Keach, as executor, moved to set aside the order of removal, alleging that he "was making every effort to make and file a proper bond in the sum of $50,000," and has so advised the court. He alleged that at the time the motion for his removal was under consideration he asked for "three to five days to file said bond," that at the time of the hearing his attorney was unavoidably absent, attending court in another county, and that the court had abused its discretion in refusing to postpone consideration of the matter of his removal until his attorney could be in attendance. Keach's motion also contained an offer to procure a good and sufficient bond, and asked that when so filed the order of May 4 removing him should be set aside.

On May 24, 1936, the probate court denied this motion, whereupon Keach as executor and individually gave notice of an appeal to the district court. The probate court fixed the amount of the appeal bond at $10,000, which was given.

The district court of Sedgwick county is served by four judges, as authorized by statute. (G. S. 1935, 20-601.) By authority of statute that court functions in divisions numbered one, two, three and four; and the work of the court is assigned by rules of court. The judge who is senior in point of service is ex officio the presiding judge when the judges sit or act in conference, and he also presides in division No. 1 of the court. (G. S. 1935, 20-601, 20-602, 20-609, 20-610.)

When Keach, as executor, appealed or attempted to appeal from the probate court's order of January 9, 1936, requiring him to give bond, the matter landed in division No. 1 of the district court under the rules prescribed by the four judges for the assignment of cases. There that appeal has been permitted to sleep on the docket without further action by court or counsel; and in our opinion it should be regarded as abandoned, and altogether without present significance.

When the appeal from the order of the probate court, of May 4, 1936, removing Keach as executor and overruling his motion to set that order aside, was docketed in the district court, it was assigned to division No. 2, in which Judge Robert L. NeSmith presided.

On July 18, 1936, Keach presented to Judge NeSmith a bond in the sum of $50,000 to qualify as executor. The bond contained the usual recitals touching faithful performance of the executor's duties; and it was approved the same day.

Judge NeSmith took the appeal under advisement until December 31, 1936, at which time he affirmed the order of the probate court removing the executor. The correctness of that judgment is the basis of this appeal.

Noting the specified errors as they are presented, it is first contended that the court erred in holding the appeal for consideration after approving the $50,000 bond which appellant had procured on July 17, 1936, more than six months after the probate court had ordered him to give a bond, and more than two months after he had been removed as executor for his failure to give such bond. We do not think that Judge NeSmith's approval of the bond had any particular significance on the matters involved in the appeal then pending and undetermined before him. The fact that Keach submitted a good bond for approval on July 17, to which neither in form nor in amount nor in sufficiency the district judge had any objection, did not settle the question whether the probate court had unlawfully removed appellant as executor on May 4. Even if no appeal had been taken from the probate court from the order of removal of May 4, and Keach had presented the same bond to the probate court for its approval on July 17, and if it had been approved by that court as to form, amount and sufficiency, such approval would not automatically have vitiated the order of removal made on May 4, nor have operated to reinstate the appellant as executor.

It is next urged that appellant was entitled to a trial *de novo* in the district court, and that the court erred in refusing to hear evi-

dence. We have recently held that on appeal to the district court from the refusal of the probate court to remove an executor, the proceedings in the district court should be handled as a trial *de novo*. (*In re Estate of Woodworth*, 145 Kan. 870, 880-884, 67 P. 2d 553; see, also, *Darnell v. Haines*, 110 Kan. 363, 203 Pac. 712; *Drake v. Seck, Adm'x*, 116 Kan. 717, 719-729, 229 Pac. 67.) But what evidence bearing on the propriety of the probate court's order removing the executor was offered by the appellant which the district court refused to hear as in a trial *de novo*? None whatever. As in any other trial which originates in the district court, there may be questions of law so clearly defined that final judgment must inevitably be pronounced thereon without going into any controverted issues of fact. Where the controlling questions presented in the appeal are of law and not of fact, a trial *de novo* on appeal is a misnomer; it is simply a review of questions of law; nothing more. And so here. The trial court filed a written opinion as the basis of its decision, holding that the probate court had discretionary power to require the giving of an executor's bond notwithstanding the testatrix requested that he be excused from so doing. That is precisely what the pertinent statute declares:

"When by the terms of any last will the testator shall express a wish that his executor shall execute the same without giving bond, the court admitting the will to probate may, in its discretion, grant letters testamentary, with or without bond, as it may deem expedient; and when granted without bond may, at any subsequent period, upon the application of any party interested, or upon its own motion, require bond to be given, as provided in the preceding section." (G. S. 1935, 22-304.)

In 23 C. J. 1069-1072 it is said:

"Security may be required of an executor after letters testamentary have been issued without bond. . . . The existence of facts rendering a bond necessary is for the determination of the probate judge in the exercise of his discretion, and a surrogate under a state of facts warranting exercise of the power to revoke letters testamentary and direct and control the conduct of an executor, may, as a condition of not exercising such power, compel the executor to give a bond."

And in the same volume at page 1079 it is said:

"The court cannot compel an executor or administrator to furnish new or additional security. Its power extends only to directing him to do so, leaving him the option to comply with such requirement or to be deprived of his office by reason of noncompliance. . . . The necessity for new or additional security is a matter resting in the discretion of the court, and the exercise of such discretion should not be disturbed, except in case of abuse."

In 2 Woerner's American Law of Administration (3d ed.), sec. 252, it is said:

"It is not possible to define with accuracy the precise circumstances which should induce the probate court to demand sureties from an executor who is otherwise exempt under the law or the direction of the testator. Of these the probate judge must necessarily be the primary, and in most cases the sole arbiter, since an appellate court will not interfere with the exercise of his discretion unless his decision be plainly in conflict with the letter or spirit of the law. The several statutory provisions on the subject have been elucidated in a slight degree only by judicial interpretations, which are usually paraphrases of the statute, and announcements that each case presented must depend upon its own peculiar features and circumstances, of which the probate court is the appropriate judge."

See, also, extended note in 138 A. S. R. 525-554.

In *McKennan's Appeal*, 27 Pa. St. 237, the Pennsylvania supreme court approved an order of the orphan's court which had ordered the executor to give security, notwithstanding his conceded solvency, saying, "There is no hardship in requiring security. . . . If the executor be unwilling to give it, he can resign the trust."

We note that in some jurisdictions the executor cannot be required to give bond where the will does not exact it. (*Evans v. Adams*, [S. C. 1936], 185 S. E. 57.) In New York the statute seems to forbid it if it is "contrary to the express terms of the will." (*In re Kennedy's Estate*, 266 N. Y. S. 883.) But the matter must be decided in the light of the pertinent statute. Kentucky has a statute substantially like our own. It reads:

"Surety shall not be required when the will so directs, unless on the motion of some one interested, or from the knowledge of the court it may appear proper to require it; and when so required, which may be at any time, surety shall be given by the executor, else he shall not be permitted to qualify, or, having qualified, he shall be removed." (Carroll's Kentucky Stat., 1930, sec. 3887.)

Rulings of the county court (having probate jurisdiction) removing executors because of their failure to give bond under the terms of that statute were upheld in *Grigsby's Guardian, &c., v. Cocke's Ex'r*, 85 Ky. 314, 3 S. W. 418; and in *Hopkins v. Howard's Ex'x* (Ky. 1936), 99 S. W. 2d 810.

Under our statute, quoted above, the probate court had power to remove the executor; and it is perfectly clear that the district court reached a correct result when it declined to disturb the order of the probate court; and in this instance it is of no consequence that the trial court held the view that it should consider and adjudge the

matter by a review of the proceedings which had transpired in the probate court and not by trial *de novo.* In *Stutz v. Douglas County Comm'rs,* 139 Kan. 135, 137-138, 29 P. 2d 1094, this court said:

"There is a well-established rule of law that when the judgment of the trial court is correct, an appellate court will not disturb that judgment on the mere ground that it may not agree with the trial court's processes of reasoning whereby it arrived at that judgment. In *State, ex rel., v. Iola Theater Corp.,* 136 Kan. 411, 414, 15 P. 2d 839, it was said:

" 'The reasons given by the court for its judgment are obviously insufficient to warrant the judgment, but that does not of itself require a reversal of the judgment. If a court renders a correct judgment based upon a wrong theory or gives incorrect reasons for the ruling, the correct judgment will stand. In *La Harpe Farmers Union v. United States F. & G.,* 134 Kan. 826, 8 P. 2d 354, it was said: 'It has been decided that a correct decision for which a wrong reason is given is not material error, and the same is true where a court renders a correct judgment upon a wrong theory of the law.' (p. 828.)

" 'See, also, *Scattergood v. Martin,* 57 Kan. 450, 46 Pac. 935; *Saylor v. Crooker,* 97 Kan. 624, 156 Pac. 737; *Hess v. Hess,* 104 Kan. 207, 178 Pac. 750; *Chaput v. Dumars,* 120 Kan. 273, 243 Pac. 311.' " (p. 137.)

One minor matter needs to be noticed. Appellees have filed an application for an allowance of costs, itemized thus:

For transcript of testimony............................... $9.00
Printing counter abstract ............................... 27.00
Printing appellee's brief and supplemental counter abstract,  3.40

Appellant's objection to these items is well taken. It was no part of appellee's duty to provide a transcript. It was not necessary to the limited review sought by appellant. It is only when the appellee has a cross-appeal that he needs to concern himself about a transcript. So much of the item for $3.40 as pertains to the printing of appellee's brief is not chargeable to the adverse litigant irrespective of how the appeal is decided. Where a counter abstract is necessary the reasonable cost thereof is chargeable. But here we think the counter abstract was unnecessary and only served to complicate what was inherently a very simple appeal. Consequently the appellee's bill of costs is disallowed. (See *Richards v. Kan. Electric Power Co.,* 126 Kan. 521, 526, 268 Pac. 847, and citations; *Putnam v. City of Salina,* 136 Kan. 637, 640-641, 17 P. 2d 827.)

The other matters urged on our attention have been carefully considered, but we discern nothing further requiring discussion. There is no material error in this record and the judgment is affirmed.